UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK_____

NATHANIEL J. BUCKLEY,

                Plaintiff,                              19-CV-319

     v.

U.S DEPARTMENT OF JUSTICE

                Defendant.

_____

## MEMORANDUM OF LAW

### INTRODUCTION

       This Memorandum of Law is submitted on behalf of defendant United States Department of Justice ("DOJ") in support of its motion for summary judgment, pursuant to Fed. R. Civ. P. 56.  This case concerns a request made by plaintiff to the Federal Bureau of Investigation ("FBI"), a component of DOJ, under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

### SUMMARY OF FACTS

       The accompanying declaration of David Hardy provides a complete and full recitation of the facts relevant to this motion.  A brief summary is contained below.

**A.**      **Administrative History of Plaintiffs' FOIA Requests**

       On February 9, 2016, Plaintiff's counsel, Michael Kuzma, submitted a FOIPA request seeking all records on his client, Nathaniel J. Buckley.  Along with the request letter, Plaintiff's counsel submitted a copy of the U.S. Department of Justice ("DOJ") Certification of Identity,

Form DOJ-361, completed with Plaintiff's information and signature.  Hardy Dec. ¶ 5; Exh. A.

By letter dated February 23, 2016, the FBI acknowledged receipt of Plaintiff's request and assigned it FOIPA Request Number 1344909-000.  Additionally, for purpose of assessing any fees, the FBI determined as a general (all other) requester, Plaintiff would be charged applicable search and duplication fees in accordance with 5 U.S.C. § 552(a)(4)(A)(ii)(III). Finally, the FBI informed Plaintiff he could appeal the FBI's determination to the Department of Justice ("DOJ"), Office of Information Policy ("OIP") within sixty days of the FBI's letter. Hardy Dec. ¶ 6; Exh. B.

By letter dated February 6, 2017, Plaintiff submitted an appeal to OIP for FBI's failure to comply with their FOIPA request within the statutory timeframe (20 days). Hardy Dec. ¶ 7; Exh. C.

By letter dated February 21, 2017, OIP acknowledged receipt of the Plaintiff's appeal and assigned it number DOJ-AP-2017-002444.  Hardy Dec. ¶ 8; Exh. D.

By letter dated March 21, 2017, OIP advised Plaintiff that DOJ regulations provide for an administrative appeal to OIP only after there has been an adverse determination by an identified component.  As no adverse determination was made by the FBI, there was no action for the Office to consider on appeal.  Hardy Dec. ¶ 9; Exh. E.

By letter dated November 20, 2017,  the FBI released responsive records to Plaintiff. The FBI advised it reviewed 16 pages of records and was releasing 14 pages in full or part, with certain information withheld pursuant to FOIA Exemptions 3, 6, 7(C), 7(D), and 7(E). The FBI advised Plaintiff he could appeal the FBI's determination by filing an administrative appeal with OIP within ninety days; and/or seek dispute resolution services by contacting the

Office of Government Information Services ("OGIS") or the FBI's FOIA Public Liaison. Hardy Dec. ¶ 10; Exh. F.

By letter dated February 6, 2018, Plaintiff submitted an appeal to OIP for FBI's alleged inadequate search and failure to reasonably segregate portions of a record.  In addition to Plaintiff's appeal letter, he included signed DOJ-361 forms from John Buckley, Sarah Buckley, Daire Brian Irwin, Carrie Ann Nader, Leslie James Pickering, Theresa Baker-Pickering, Sean Francis Raess, and Michael Kuzma.  The signed forms authorized release of information to Plaintiff's counsel, Michael Kuzma.  Hardy Dec. ¶ 11; Exh. G.

By letter dated February 20, 2018, OIP acknowledged receipt of the Plaintiff's appeal and assigned it number DOJ-AP-2018-002862.  Hardy Dec. ¶ 12; Exh. H.

By letter dated August 9, 2018, OIP advised Plaintiff that, after considering his appeal, it was affirming the FBI's actions on his request.  Specifically, OIP determined the FBI properly withheld certain information because it is protected from disclosure under the FOIA.  Additionally, OIP determined the FBI's response was correct and that it conducted an adequate, reasonable search for records.  Finally, OIP advised Plaintiff is he was dissatisfied with the action on his appeal, the FOIA permitted him to file a lawsuit in federal district court in accordance with 5 U.S.C. § 552(a)(4)(B).  Hardy Dec. ¶ 13; Exh. I.

Plaintiff filed this lawsuit on March 8, 2019.  Dkt. #1.

Upon request of the FBI, Plaintiff provided a letter dated June 12, 2019, with newly signed DOJ-361 forms from John Buckley, Sarah Buckley, Daire Brian Irwin, Carrie Ann Nader, Leslie James Pickering, Theresa Baker-Pickering, Sean Francis Raess, and Plaintiff's counsel Michael Kuzma.  The newly signed forms authorize release of information to Plaintiff.  Hardy Dec. ¶ 15; Exh. J.

3

By letter dated July 12, 2019, the FBI released records responsive to Plaintiff's request. The FBI advised it reviewed 58 pages of records and was releasing 54 pages of records in full or part, with certain information withheld pursuant to FOIA Exemptions 3, 6, 7(C), 7(D), and 7(E). Hardy Dec. ¶ 16, Exh. K.

**B.      The FBI's Search Was Adequate**

Plaintiffs, in their FOIA request, sought documents relating to Plaintiff Nathaniel Buckley. Hardy Dec., ¶ 5, Exh. A. Accordingly, the FBI, in responding to this request, searched its files by using the search terms "Buckley, Nathaniel", "Buckley, Nathaniel, J", "Buckley, Nathaniel, John", and "Buckley, Nate". Hardy Dec., ¶ 30. In response to Plaintiff's request, the FBI processed a total of 58 responsive pages. Of these pages, three pages were released in full ("RIF"), 51 pages were released in part ("RIP"), and four (4) pages were withheld in full ("WIF").

<u>**ARGUMENT**</u>

<u>**Standard of Review**</u>

Under FOIA, "every federal agency is required . . . to make its records 'promptly available to any person' upon receipt of a reasonably articulated request." <u>Kuzma v. U.S. Dep't of Justice</u>, No. 12-CV-807S, 2014 WL 4829315, at *2 (W.D.N.Y. Sept. 29, 2014) (quoting <u>Phillips v. Immigration & Customs Enforcement</u>, 385 F. Supp. 2d 296, 301 (S.D.N.Y. 2005) and 5 U.S.C. § 552(a)(3)). "The FOIA embodies Congress's desire that an open government allow for 'an informed citizenry to hold the governors accountable to the governed.'" <u>Kuzma</u>, 2014 WL 4829315, at * 2 (quoting <u>Grand Cent. P'ship, Inc. v. Cuomo</u>, 166 F.3d 473, 478 (2d Cir. 1999); <u>Phillips</u>, 385 F. Supp. at 301 ("FOIA reflects a strong Congressional policy of requiring full public disclosure of documents and records maintained

by federal agencies."). "To that end, the FOIA requires the fullest possible public disclosure of government-kept records yet at the same time maintains the confidentiality of sensitive information based on narrowly tailored exemptions intended to protect certain interests." Kuzma, 2014 WL 4829315, at * 2.

"Federal courts are required to conduct de novo review of an agency's decision to withhold requested records under the FOIA." Kuzma, 2014 WL 4829315, at * 2 (citing Massey v. FBI, 3 F.3d 620, 622 (2d Cir. 1993)). "The preferred method of doing so is by summary judgment." Kuzma, 2014 WL 4829315, at * 2 (citing Fox News Network, LLC v. U.S. Dep't of the Treasury, 739 F. Supp. 2d 515, 532 (S.D.N.Y. 2010); Jones-Edwards v. Appeal Bd. of NSA, 352 F. Supp. 2d 420, 423 (S.D.N.Y. 2005)).

In a FOIA case, a plaintiff is entitled to summary judgment "when an agency seeks to protect material which, even on the agency's version of the facts, falls outside the proffered exemption." New York Times Co. v. U.S. Dep't of Defense, 499 F. Supp. 2d 501, 509 (S.D.N.Y. 2007). A federal agency is entitled to summary judgment "when it has thoroughly searched for responsive records and has articulated reasonably detailed explanations why any withheld documents fall within an exemption." Kuzma, 2014 WL 4829315, at * 2 (citing Carney v. U.S. Dep't of Justice, 19 F.3d 807, 812 (2d Cir. 1994); Wilner v. Nat'l Sec. Agency, 592 F.3d 60, 69 (2d Cir. 2009)). "To carry its burden, the defending agency may rely on a *Vaughn* index, which consists of 'affidavits to the court that describe with reasonable specificity the nature of the documents at issue and the justification for nondisclosure; the description provided in the affidavits must show that the information logically falls within the claimed exemption.'" Kuzma, 2014 WL 4829315, at * 2 (quoting Lesar v. United States

Dep't of Justice, 636 F.2d 472, 481 (D.C. Cir. 1980); Halpern v. Fed. Bureau of Investigation, 181 F.3d 279, 291 (2d Cir. 1999) (citing Lesar).

The Vaughn index has three functions: "(1) it forces the government to analyze carefully any material withheld, (2) it enables the trial court to fulfill its duty of ruling on the applicability of the exemption, and (3) it enables the adversary system to operate by giving the requester as much information as possible, on the basis of which he can present his case to the trial court." Kuzma, 2014 WL 4829315, at * 2 (quoting Halpern, 181 F.3d at 291; Keys v. United States Dep't of Justice, 830 F.2d 337, 349 (D.C. Cir. 1987)). "Agency affidavits, including the *Vaughn* index, are presumed to have been made in good faith." Kuzma, 2014 WL 4829315, at * 2 (citing Carney, 19 F.3d at 812). "This presumption is not rebutted by bare allegations or speculative claims that additional documents exist." Kuzma, 2014 WL 4829315, at * 2 (citing Grand Cent., 166 F.3d at 489). "If the agency's submissions are facially adequate, summary judgment is warranted unless the plaintiff can make a showing of bad faith on the part of the agency or present evidence that the exemptions claimed by the agency should not apply." Garcia v. United States Dep't of Justice, Office of Info. & Privacy, 181 F.Supp.2d 356, 366 (S.D.N.Y. 2002) (citing Carney, 19 F.3d at 812); Center for Constitutional Rights v. C.I.A., 765 F.3d 161, 166 (2d Cir. 2014).

## POINT I

### THE FBI IS ENTITLED TO SUMMARY JUDGMENT AS ITS SEARCH WAS ADEQUATE

In response to FOIA requests, federal agencies are obligated to conduct searches that are reasonably calculated to locate all responsive records. Weisberg v. U.S. Dep't of Justice, 705 F.2d 1344, 1351 (D.C. Cir. 1983) ("Weisberg I"); Kennedy v. U.S. Department of Justice, 03-CV-6077, 2004 WL 2284691, at *2 (W.D.N.Y. 2004); Pub. Investors Arbitration Bar Ass'n

6

v. U.S. Sec. & Exch. Comm'n, No. 11-2285, 2013 WL 987769 at *4 (D.D.C. Mar. 14, 2013).

Under this reasonableness standard, an agency does not need to search every record system.

Oglesby v. U.S. Dep't of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990) ("There is no requirement that an agency search every record system.").  Nor is the adequacy of a search judged by its results.  Iturralde v. Comptroller of the Currency, 315 F.3d 311, 315 (D.C. Cir. 2003) ("[T]he adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search."); Meeropol v. Meese, 790 F.2d 942, 952-53 (D.C. Cir. 1986) ("[A] search is not unreasonable simply because it fails to produce all relevant material[.]"); Mobley v. CIA, 924 F.Supp.2d 24, 36 (D.D.C. 2013).  Rather, an agency's search is measured against a standard of reasonableness applied to the specific FOIA request, i.e., did the agency search all places where responsive records were reasonably likely to be found.  Weisberg v. U.S. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984) ("Weisberg II"); Scaff-Martinez v. DEA, 770 F. Supp. 2d 17, 21-22 (D.D.C. 2011).  Accordingly, an agency's "failure to turn up a particular document, or mere speculation that as yet uncovered documents might exist, does not undermine the determination that the agency conducted an adequate search for the requested records." Wilbur v. CIA, 355 F.3d 675, 678 (D.C. Cir. 2004) (per curiam).

To justify its search for purposes of summary judgment, an agency needs only to provide affidavits explaining the scope and method of the search in reasonable detail.  Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982) ("[A]ffidavits that explain in reasonable detail the scope and method of the search conducted by the agency will suffice to demonstrate compliance with the obligations imposed by the FOIA.").  Those agency affidavits are entitled to a presumption of good faith. SafeCard Servs., Inc., v. Sec. Exch. Comm'n, 926 F.2d 1197,

1200 (D.C. Cir. 1991); <u>Mobley</u>, 2013 WL 452932 at *33 ("The only situation in which the Court would withhold a presumption of good faith as to a sworn agency declaration is if the plaintiffs were able to present contrary evidence of bad faith.").  Once the agency has shown "that it conducted 'reasonably calculated' searches, the burden is on [plaintiff] to identify specific additional places the agency should now search."  <u>Hodge v. FBI</u>, 703 F.3d 575, 580 (D.C. Cir. 2013).  In short, where affidavits establish that an agency's FOIA search was reasonably calculated to find all responsive records, the agency has satisfied its obligation to conduct an adequate search.  <u>Perry</u>, 684 F.2d at 127; <u>Cooper v. Stewart</u>, 763 F. Supp. 2d 137, 141-42 (D.D.C. 2011), <u>aff'd</u>, 2011 WL 6758484 (D.C.Cir. Dec 15, 2011); <u>see also</u> Fed. R. Civ. P. 56(c).

As stated in the accompanying Hardy Declaration, Plaintiff, in his FOIA request, sought documents relating to himself, Nathaniel Buckley. Hardy Dec., ¶ 5, Exh. A. Accordingly, the FBI, in responding to this request, searched its files by using the search terms "Buckley, Nathaniel", "Buckley, Nathaniel, J", "Buckley, Nathaniel, John", and "Buckley, Nate".  Hardy Dec., ¶ 30.  The FBI's search for responsive records was comprehensive, reasonably calculated to locate responsive documents, and did, in fact, result in the processing of a total of 58 responsive pages.  Of these pages, three pages were released in full ("RIF"), 51 pages were released in part ("RIP"), and four (4) pages were withheld in full ("WIF"). Hardy Declaration ¶¶ 4, 16, 30-32.  Therefore, defendant is entitled to summary judgment.

<u>**POINT II**</u>

<u>**PLAINTIFF HAS NO RIGHT OF ACCESS TO THE SOUGHT AFTER RECORDS UNDER THE PRIVACY ACT**</u>

The Privacy Act, 5 U.S.C. § 552a, generally provides individuals a right of access to records about them maintained in government files, unless the records are part of a system of

records exempted from individual access.  5 U.S.C. § 552a(d).  Exemption (j)(2) of the Privacy

Act exempts from mandatory disclosure systems of records "maintained by an agency or

component thereof which performs as its principal function any activity pertaining to the

enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or

to apprehend criminals . . . ."  5 U.S.C. § 552a(j)(2).  Under the Privacy Act, agencies may

promulgate rules to exempt systems of records from various provisions of the Act, to include

individual requests for access or amendment.  5 U.S.C. § 552a(d), (j) and (k).  Pursuant to that

statutory authority, DOJ promulgated regulations exempting certain systems of records from

individual access under the Privacy Act, including FBI law enforcement investigative records.

28 C.F.R. § 16.96(a)(1); Majid v. Fed. Bureau of Investigation, No. CV 16-731 (GK), 2017

WL 1167199, at *4 (D.D.C. Mar. 28, 2017).   In order to qualify for this exemption, the

allegedly exempt document must be a law enforcement record.  Doe v. F.B.I., 936 F.2d 1346,

1353-1354 (D.C. Cir. 1991).  Once that initial burden is met by the agency, the burden shifts

to the plaintiff "to produce evidence that the asserted law enforcement rationale for an

investigation was in fact pretextual."  Id. at 1354.

Per the Hardy Declaration, the FBI processed records from its investigative files which

were compiled and maintained per the FBI's primary law enforcement mission to investigate

violations of federal laws.  Hardy Dec. ¶ 35.  Furthermore, the responsive records at issue are

law enforcement records stored in the CRS, a system of records specifically exempt from the

access provisions of the Privacy Act as noted above per 5 U.S.C. § 552a(j)(2), as implemented

by 28 C.F.R. §16.96(a)(1).  Hardy Dec. ¶ 35.  Consequently, pursuant to 28 C.F.R. §

16.96(a)(1), these records are exempt from disclosure through the Privacy Act pursuant to

Exemption (j)(2); however, the FBI considered these records for disclosure under the FOIA

to allow for maximum access by Plaintiff.  Hardy Dec. ¶ 35.  No information was withheld from Plaintiff unless it was also exempt from disclosure pursuant to one or more FOIA Exemptions. Hardy Dec. ¶ 35.  Accordingly, the FBI has established that the records in question are law enforcement records exempt and that Plaintiff has no individual right of access to these records under the Privacy Act, pursuant to 5 U.S.C. § 552(d) and 28 C.F.R. § 16.96(a)(1).

## POINT III

## THE FBI'S FOIA RESPONSE WAS PROPER AND PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED

FOIA generally requires disclosure of government records unless the requested information falls within an enumerated FOIA exemption.   5 U.S.C. § 552(b). Notwithstanding the FOIA's "liberal congressional purpose," the statutory exemptions must be given "meaningful reach and application." John Doe Agency v. John Doe Corp., 493 U.S. 146, 152, 110 S.Ct. 471, 107 L.Ed.2d 462 (1989).  "Requiring an agency to disclose exempt information is not authorized."  Minier v. CIA, 88 F.3d 796, 803 (9th Cir. 1996) (quoting Spurlock v. FBI, 69 F.3d 1010, 1016 (9th Cir. 1995)).  Agency decisions to withhold information under the FOIA are reviewed de novo, and the agency bears the burden of proving its claim for exemption.  5 U.S.C. § 552(a)(4)(B); Kennedy, 2004 WL 2284691, at * 2; A. Michael's Piano. Inc. v. FTC, 18 F.3d 138, 143 (2d Cir. 1994).

## A.    Segregability

FOIA requires that government agencies disclose "[a]ny reasonably segregable portion of a record . . . after deletion of the portions which are exempt." 5 U.S.C. § 552(b). "Non-exempt portions of a record may be withheld only if they are 'inextricably intertwined' with the exempt portions." Kuzma, 2014 WL 4829315, at * 5 (quoting Inner City Press/Cmty. on

10

the Move v. Bd. of Governors of the Fed. Reserve Sys., 463 F.3d 239, 249 n. 10 (2d Cir. 2006)). "If an agency determines that non-exempt portions of a record are not segregable, it must justify that determination in detail." Kuzma, 2014 WL 4829315, at * 5 (citing Mead Data Cent., Inc. v. U.S. Dep't of Air Force, 566 F.2d 242, 261 (D.C. Cir. 1977)). "In this regard, an agency is entitled to a presumption that it complied with the FOIA's segregability requirements." Kuzma, 2014 WL 4829315, at * 5 (citing Sussman v. U.S. Marshals Serv., 494 F.3d 1106, 1117 (D.C. Cir. 2007)). "A district court 'must make specific findings of segregability regarding the documents to be withheld' before ruling that an asserted FOIA exemption is applicable." Kuzma, 2014 WL 4829315, at * 5 (quoting Sussman at 1116). (100)

Here, following the segregability review, the FBI determined that 3 pages could be released in full without redaction as there was no foreseeable harm to an interest protected by a FOIA exemption. Hardy Dec. ¶ 76. The FBI also determined that 51 pages could be released in part with redactions per the identified FOIA exemptions herein. Hardy Dec. ¶ 76. These pages comprise a mixture of material that could be segregated for release and material that was withheld as release would trigger foreseeable harm to one or more interests protected by the cited FOIA exemptions on these pages. Hardy Dec. ¶ 76. Lastly, the FBI determined that 4 pages were required to be withheld in their entirety. Hardy Dec. ¶ 76. The FBI determined that all information on each page was covered by one or more of the cited FOIA exemptions; therefore, there was no information that could be reasonably segregated for release without triggering foreseeable harm to one or more of the cited FOIA exemptions. Hardy Dec. ¶ 76. Accordingly, the Court should find that defendant conducted an appropriate segregability review.

Case 1:19-cv-00319-LGF    Document 14    Filed 12/20/19    Page 12 of 19

**B.      The FBI's FOIA Response Was Proper Under FOIA Exemption 3**

FOIA Exemption 3, 5 U.S.C. § 552(b)(3), protects records that are "specifically exempted from disclosure by statute . . . provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3).  In reviewing an agency's invocation of Exemption 3, "the Supreme Court [has] engaged in a two-prong review. First, is the statute in question a statute of exemption as contemplated by exemption 3? Second, does the withheld material satisfy the criteria of the exemption statute?" Fitzgibbon v. CIA, 911 F.2d 755, 761-62 (D.C. Cir. 1990). As the D.C. Circuit has explained, "'Exemption 3 differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage.'" Fitzgibbon, 911 F.2d at 761-62 (quoting Ass'n of Retired R.R. Workers v. U.S. R.R. Ret. Bd., 830 F.2d 331, 336 (D.C. Cir. 1987)).  "Fed R. Crim P. 6(e) represents such a statute and, thus, documents related to the grand jury process are exempt from disclosure under Exemption 3."  Garcia v. U.S. Dep't of Justice, Office of Info. & Privacy, 181 F. Supp. 2d 356, 378 (S.D.N.Y. 2002)

In this case, records responsive to Plaintiffs' request and withheld under (b)(3)-1 relate to pen register information specifically exempt pursuant to 18 U.S.C. § 3123(d), the Pen Register Act.  The Pen Register Act protects from disclosure information pertaining to certain court "order(s) authorizing or approving the installation and use of pen registers or a trap and trace device;" and information pertaining to "the existence of the pen register or trap and trace device or the existence of the investigation."  Where documents at issue contain information

that if disclosed would reveal the existence or use of a pen register or trap and trace device, or reveal the existence of an investigation involving a pen register or trap and trace device, that information is protected from disclosure by Exemption 3.  As relevant to 5 U.S.C. § 552 (b)(3)(B), the Pen Register Act is a statute  enacted before the date of enactment of the OPEN FOIA Act of 2009.  The information withheld from disclosure pursuant to Exemption 3 consists of details reflecting the set up and installation of a pen register and trap and trace device during a criminal investigation.  Accordingly, the FBI properly applied Exemption 3, in conjunction with Exemption 7(E), to withhold the identities and phone numbers of the individuals subject to pen registers in this case, because it is precluded from disclosing such information pursuant to 18 U.S.C. § 3123.

## C.    The FBI's FOIA Response Was Proper Under FOIA Exemptions 6 and 7(C)

FOIA Exemption 6, 5 U.S.C. § 552(b)(6), permits the government to withhold all information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute an unwarranted invasion of personal privacy."  The Supreme Court, in U.S. Dept. of State v. Washington Post Co., 456 U.S. 595, 102 S.Ct. 1957, 72 L.Ed.2d 358 (1982), held that all information that "applies to a particular individual" satisfies the requirements for protection under Exemption 6.  Id. at 602.  Thus, information that applies to any particular, identifiable individual comes within Exemption 6.

"The next step under Exemption 6 involves identifying the relevant privacy interests in non-disclosure and the public interests in disclosure, and determining 'whether, on balance, disclosure would work a clearly unwarranted invasion of personal privacy.'"  Reed v. National Labor Relations Board, 927 F.2d 1249, 1251 (D.C. Cir. 1991).  FOIA Exemption 6 requires the courts to balance the right of the public to gain access to government records

against the privacy right of individuals identified in those records. "The phrase 'clearly unwarranted invasion of personal privacy' enunciates a policy that will involve a balancing of interests between the protection of an individual's private affairs from unnecessary public scrutiny, and the preservation of the public's right to governmental information." Dept. of the Air Force v. Rose, 425 U.S. 352, 372, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976); FLRA v. United States Dep't of Veterans Affairs, 958 F.2d 503, 505 (2d Cir. 1992).

FOIA Exemption 7(C), 5 U.S.C. § 552(b)(7)(C), exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such [documents] ... could reasonably be expected to constitute an unwarranted invasion of personal privacy." Where privacy interests are implicated and no public interest is served by the disclosure, Exemption 7(C) may be invoked. U.S. Dept. of Justice v. Reporters Committee For Freedom of Press, 489 U.S. 749, 775, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989). "[D]isclosure of records containing personal details about private citizens can infringe significant privacy interests." Reporter's Committee, 489 U.S. at 766.

Before an agency can invoke any of the harms enumerated in Exemption 7, it must first demonstrate the records or information at issue were compiled for law enforcement purposes. Pursuant to 28 U.S.C. §§ 533 and 534, and Executive Order 12333 as implemented by the Attorney General's Guidelines for Domestic FBI Operations ("AGG-DOM") and 28 C.F.R. § 0.85, the FBI is the primary investigative agency of the federal government with authority and responsibility to investigate all violations of federal law not exclusively assigned to another agency, to conduct investigations and activities to protect the United States and its people from terrorism and threats to national security, and to further the foreign intelligence objectives of the United States. Under these investigative authorities, the FBI generated the

responsive records in furtherance of investigations of violations of federal laws to include domestic terrorism and the subject's association with individuals directly involved in such violations. Additionally, records responsive to Plaintiff's request were compiled during the FBI's criminal investigation into other sensitive investigations involving individuals and organizations the subject had an association with. Thus, the FBI compiled this information for a law enforcement purpose, and the records squarely fall within the law enforcement duties of the FBI; accordingly, the information readily meets the threshold requirement of Exemption (b)(7).

When withholding information pursuant to these two exemptions, the FBI is required to balance the privacy interests of the individuals mentioned in these records against any public interest in disclosure. In asserting these exemptions, each piece of information was scrutinized to determine the nature and strength of the privacy interest of every individual whose name and/or identifying information appears in the documents at issue. When withholding the information, the individual's privacy interest was balanced against the public's interest in disclosure. For purposes of these exemptions, a public interest exists only when information about an individual would shed light on the FBI's performance of its mission to protect and defend the United States against terrorist and foreign intelligence threats, to uphold and enforce the criminal laws of the United States, and to provide leadership and criminal justice services to federal, state, municipal, and international agencies and partners. In each instance where information was withheld pursuant to Exemptions 6 and 7(C), the FBI determined that the individuals' privacy interests outweighed any public interest in disclosure. Hardy Dec., ¶¶ 46-51. Accordingly, the Court should find that the FBI's designation of these exemptions was proper.

**D.    FBI's FOIA Response Was Proper Under FOIA Exemption 7(D)**

FOIA Exemption 7(D) exempts from disclosure:

> [R]ecords or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... could reasonably be expected to disclose the identity of a confidential source, including a State, local or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D).    Where the requested records concern a criminal investigation conducted by the FBI, the second clause of Exemption 7(D) applies.  Ferguson v. F.B.I., 957 F.2d 1059, 1069 (2d Cir. 1992).  Thus all information furnished by a "confidential source" may be withheld. Id. ("Once it is shown that information was provided by a confidential source, the information itself is protected from disclosure....").  Under Exemption 7(D), "[a] source should be deemed confidential if the source furnished information with the understanding that the FBI would not divulge the communication except to the extent the Bureau thought necessary for law enforcement purposes."  United States Dep't of Justice v. Landano, 508 U.S. 165, 174, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993).  Exemption 7(D) ensures that confidential sources are protected in order to prevent harm to them and loss of a source of information.  United Techs. v. NLRB, 777 F.2d 90, 94 (2d Cir.1985).  A source is deemed confidential if he "provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred."  Landano, 508 U.S. at 172, 113 S.Ct. 2014 (citation and internal quotation marks omitted).

Numerous confidential sources report to the FBI on a regular basis and are confidential "informants" within the common meaning of the term.  Some of these sources provide

16

information under an express assurance of confidentiality. Other individuals are interviewed under circumstances from which an assurance of confidentiality can reasonably be inferred. In either situation, these individuals are considered to be confidential sources since they furnished information only with the understanding that their identities and the information provided will not be released outside the FBI. Information provided by these individuals is singular in nature, and if released, could reveal their identities. The FBI has learned through experience sources assisting, cooperating with, and providing information to the FBI must be free to do so without fear of reprisal. The FBI has also learned sources must be free to furnish information to the FBI with complete candor and without the understandable tendency to hedge or withhold information because of fear their cooperation with the FBI will later be made public. Sources providing information to the FBI should be secure in the knowledge that their assistance and their identities will be held in confidence. Hardy Dec. ¶ 53.

Exemption (b)(7)(D) – 1, 2, and 3 has been asserted, in conjunction with Exemptions (b)(6) and (b)(7)(C), to protect the name, identifying data, and information provided by individuals who assisted the FBI in the criminal investigation of Plaintiff with implied or express assurances of confidentiality, as well as the confidential source file number, and confidential source symbol number. Hardy Dec. ¶¶ 55-61. Accordingly, this Court should find that the FBI's assertion of Exemption 7(D) was appropriate.

**E.    FBI's FOIA Response Was Proper Under FOIA Exemption 7(E)**

Exemption 7(E) protects "records or information compiled for law enforcement purposes," that, if disclosed, "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement

17

investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).

The FBI asserted FOIA Exemption 7(E) to protect information in these records, the release of which would disclose techniques and/or procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law. Hardy Dec. ¶ 63. This exemption affords categorical protection to techniques and procedures used in law enforcement investigations, it thereby protects techniques and procedures that are not well-known to the public, and protects non-public details about the use of well-known techniques and procedures. Hardy Dec. ¶ 63. Specifically, here, the FBI protected investigative techniques and procedures, sensitive file numbers or subfile numbers, information regarding targets, dates, and scope of surveillance, database identifiers, types of investigations, collection and analysis of information, non-public source reporting documents, identity of FBI squads, units, and divisions, operational directives, targets of pen registers, and tactical information contained in operational plans, Hardy Dec. ¶¶ 65-75. For the reasons stated in the Hardy Declaration, the Court should find that Exemption 7(E) was properly asserted.

## <u>CONCLUSION</u>

Defendant's motion for summary judgment should be granted and plaintiff's complaint should be dismissed in its entirety with prejudice.

DATED:  Buffalo, New York, December 20, 2019

JAMES P. KENNEDY, JR.
United States Attorney


BY:    s/MICHAEL S. CERRONE
Assistant U.S. Attorney
U.S. Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
716-843-5851
michael.cerrone@usdoj.gov